**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

---

HIGHWAY LEGENDS LLC, a Wisconsin limited liability company; and TODD J. HACKER, an individual,

Plaintiffs,

*vs.*

IL TRUCK GROUP LLC d/b/a FORGE TRUCK CENTERS LLC; GLOBE GROUP LLC, a Delaware limited liability company; GLOBE GROUP REAL ESTATE LLC, a Delaware Limited Liability Company; COLE CHRISTIAN STARODUB, an individual; MICHAEL DENNIS DIGIURO, an individual; VINCENT PAUL BORDIGNON SR., an individual; REDNECK DIESEL PERFORMANCE LLC, a Texas limited liability company; TODD T. STEWART, an individual; ROBERT WILLIAM BENNERS JR. a/k/a BOBBY BENNERS, an individual; and DOES 1–25,

Defendants.

Case No. 1:26-cv-018525

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiffs, Highway Legends LLC ("Legends") and Todd J. Hacker, bring this Complaint against Defendants, IL Truck Group LLC d/b/a Forge Truck Centers LLC ("Forge"), Globe Group LLC ("Globe"), Globe Group Real Estate LLC ("Globe RE"), Cole Christian Starodub ("Starodub"), Michael Dennis DiGiuro ("DiGiuro "), Vincent Paul Bordignon Sr. ("Bordignon"), Redneck Diesel Performance LLC ("Redneck"), Todd T. Stewart ("Stewart"), Robert William Benners Jr. a/k/a Bobby

Benners ("Benners") and DOES 1-25 (collectively, "Defendants"), and seek damages, rescission, and injunctive relief based on the following allegations:

## I. PRELIMINARY STATEMENT

1. Legends is a limited liability company formed under Wisconsin law by Hacker, its sole member and owner, for the purpose of engaging in Over-the-Road (OTR) trucking business to transport freight for third parties over long distances with semi-trucks and tractor-trailers.

2. Legends is a one-man, one-truck, operation—Mr. Hacker is its only driver and source of income.

3. Mr. Hacker has been a professional truck driver since 1985 and now specializes in heavy-haul OTR trucking, transporting loads weighing between 103,000 and 150,000 pounds (total combined weights of 170,000–210,000 pounds).

4. Mr. Hacker primarily hauled communication and fiber-optic buildings from South Dakota, Indiana, and Louisiana until the Defendants defrauded him. Consequently, this action is against the two groups of Defendants whose collective fraudulent and unfair business practices selling and inspecting OTR Tractor Trailer Trucks caused Plaintiffs substantial damages that are ongoing.

5. The first group of Defendants consists of Forge, which is owned, controlled and operated by Globe, Globe RE, Starodub, DiGiuro, their sales manager, Bordignon, and Does 1-25 (collectively referred to as the "Forge Defendants").

6. The Forge Defendants intentionally sold Plaintiffs a worthless heavy-haul, long-distance truck using fraudulent and unfair business practices.

7. The second group of Defendants consists of Redneck and its two members and owners, Stewart, and their contractor, Benners, and Does 1-25 (collectively referred to as the "Redneck Defendants").

8. The Redneck Defendants engaged in fraudulent and unfair business practices by selling Plaintiffs an "inspection" false certificate for the heavy-haul, long-distance truck the Forge Defendants sold Plaintiffs after the sale, without ever inspecting it, and without a license or training to even allow such inspections.

9. The Forge Defendants and Redneck Defendants are collectively referred to as the "Defendants" in the Complaint.

10. This action involves Defendants' systematic commercial-truck fraud scheme in which the Forge Defendants purchase severely distressed heavy trucks, conceal their true condition, falsely represent them to the public as thoroughly inspected and immediately work-ready, and then sell them for substantial profits to the unsuspecting truck operators they fraudulently induce to purchase the trucks and who are then left without recourse.

11. Defendants' conduct is not isolated; they already faced prior litigation involving materially similar allegations in Montana and Texas, but nevertheless repeated the same fraudulent conduct within months.

12. Defendants falsely represented to Plaintiffs that the 2006 Peterbilt 379, VIN 1XP5PBEX66N892655, had been thoroughly inspected *prior to the sale*, was in very good condition and "ready to go to work" that day for heavy-haul operations exceeding 100,000 pounds.

13. Defendants knew their statements were false. The truck had bilateral frame cracks, a bypassed cooling system, fuel leaks, steering and brake defects, and many additional material defects making it unsafe and legally unfit for operation.

14. Forge and its individual owners, Starodub and DiGiuro, operate a systematic scheme in which they purchase heavily damaged, defective, and federally out-of-service commercial trucks at industrial auction for deep discounts, conceal the trucks' true condition through cosmetic work and willful non-inspection, and then resell them to working-class owner-operators and small trucking companies at inflated prices by making uniform, scripted misrepresentations that the trucks have been "thoroughly inspected," are in "excellent condition," and immediately "ready to go to work."

15. Forge and its sales manager Bordignon had already been sued:

15.01 in Montana federal court by a construction company who purchased a truck Forge misrepresented as "fully inspected" and "ready to hit the ground running"—after Bordignon personally refused to take the truck back; that a case settled in February 2025 (*Roadarmel Constr., Inc. v. IL Truck Grp., LLC*, No. CV-24-38-BU-BMM, D. Mont.) ("*Roadarmel* Lawsuit") [*see,* ***Exhibits 1, 2, 3, 4, 5***].

15.02 in Texas state court, and had default judgment entered by another buyer who paid for a truck that had its entire emissions aftertreatment system removed and concealed—a judgment

entered in March 2026 (*R.W. Gunn v. Forge Truck Centers LLC*, Dallas County, TX) [***Exhibits 6, 7***]; and

15.03 in Texas state court by another buyer who Forge sold a truck with a deliberately disabled emissions system and concealed the defect, the same species of misconduct—*Target Contractors, LLC v. Forge Truck Centers, LLC*, No. DC-26-09064, 134th Dist. Ct., Dallas Cnty., Tex., filed May 18, 2026. [***Exhibit 8***].

16. Forge settled the *Roadarmel* Lawsuit on February 7, 2025. Exactly 181 days later, Forge sold Plaintiffs a 2006 Peterbilt 379—VIN 1XP5PBEX66N892655—("Truck") with non-disclosed, and concealed, bilateral frame cracks, a bypassed cooling system, multiple fuel system leaks, defective steering components, inoperable brakes, and more than 60 additional material defects.

17. The Truck was so mechanically structurally compromised it would have been placed out of service by any DOT roadside enforcement officer before it traveled a single mile.

18. Forge and Bordignon repeated the identical script: they told Hacker the truck had been "thoroughly inspected," was in "very good condition," was "ready to go to work," and was suitable for Hacker's specific stated purpose of hauling loads exceeding 100,000 pounds prior to the sale. Each of these representations was false. [*See* ***Exhibit 9*** (Inspection Report]; ***Exhibit 10*** (Nelson Defect List)].

19. Starodub and DiGiuro personally reap enormous financial rewards from this fraudulent enterprise.

20. While their victims—working truck operators who took out purchase-money loans and now pay daily storage fees on trucks that cannot legally operate—absorb devastating losses, Starodub drives a 2026 Tesla, a 2024 Mercedes-Benz GLE 350, and previously owned a $179,000 Mercedes-Benz G63 AMG and a $113,950 Mercedes-Benz GLE 63 AMG, all financed through or registered at Forge's business addresses. He has recently relocated to a home in Hinsdale, Illinois, a suburb whose median home value exceeds $1,181,159. DiGiuro is subject to an IRS federal tax lien in excess of $3,500,000. The fraud funds their lifestyle.

21. Plaintiffs seek rescission of the purchase, compensatory damages for all losses, treble damages, punitive damages, pecuniary loss and reasonable attorney fees and costs under Wisconsin's Deceptive Trade Practices Act and Texas Deceptive Trade Practices Act, and other causes of action, and a permanent injunction prohibiting Defendants from representing any truck as "inspected" without contemporaneous documentation predating the sale.

22. Plaintiffs seek compensatory damages, treble damages, and punitive damages that exceed the sum or value of $75,000, exclusive of interest and costs. Additionally, Plaintiffs' action seeks rescission, attorneys' fees, costs, and permanent injunctive relief.

## II. PARTIES

### *A. Plaintiffs.*

23. Legends is a single-member limited liability company formed under Wisconsin law whose sole member is Hacker, a citizen of Wisconsin; Legends is

therefore a citizen of Wisconsin and of no other State and organized as an OTR trucking business that transports freight over long distances using Semi-trucks/Tractor-trailers.

24. Legends maintains its principal place of business in Manitowoc County at 10719 Center Road, Newton, Wisconsin 53063.

25. Mr. Hacker is a natural person who, at all times relevant to this lawsuit was a citizen of and resided in the City of Newton, Manitowoc County, Wisconsin.

***B. Forge Defendants.***

26. Forge has operated under the following four successive, but different, names since its formation a decade ago: "CMS Diesel LLC," ""IL Truck Group," "IL Truck Group LLC," and now "Forge Truck Centers LLC."

27. On January 10, 2016, Starodub and DiGiuro formed CMS Diesel LLC, a limited liability company organized under Illinois law.

28. CMS Diesel LLC's Articles of Organization identify Starodub and DiGiuro as its only managers and members with whom its management is vested.

29. A true copy of CMS Diesel LLC's Articles of Organization is attached as ***Exhibit 11***.

30. CMS Diesel LLC has never identified anyone other than Starodub and DiGiuro as its managers and members having the authority of manager.

31. On July 13, 2021, CMS Diesel LLC filed Articles of Amendment with the Illinois Secretary of State stating that its Articles of Organization are amended to change the name of the limited liability company to "IL Truck Group LLC."

32. A true copy of CMS Diesel LLC's Articles of Amendment is attached as ***Exhibit 12***.

33. On February 2, 2022, IL Truck Group LLC filed its Annual Report with the Illinois Secretary of State identifying Starodub and DiGiuro as its only managers and members with whom its management is vested.

34. A true copy of IL Truck Group LLC's 2022 Annual Report is attached as ***Exhibit 13***.

35. On February 21, 2024, Forge Truck Centers LLC filed an Application for Registration of a Foreign Limited Liability Company with the Texas Secretary of State falsely identifying itself as a limited liability company formed under Illinois law on 01/10/2016.

36. A true copy of Forge Truck Centers LLC's Texas Application for Registration of a Foreign Limited Liability Company is attached as ***Exhibit 14***.

37. Forge Truck Centers LLC's Texas Application for Registration of a Foreign Limited Liability Company identifies Forge's principal place of business as 17170 US-30, Hinckley, Illinois 60520.

38. Forge Truck Centers LLC's Texas Application for Registration of a Foreign Limited Liability Company identifies Globe as Forge's only governing person and lists Globe's address as 17170 US-30, Hinckley, Illinois 60520.

39. "Forge Truck Centers LLC"may be served with process through its Registered Agent, Cogency Global Inc., 1601 Elm Street, Suite 4360, Dallas, Texas 75201, or wherever it may be found.

40. On December 16, 2024, IL Truck Group LLC filed its Annual Report with the Illinois Secretary of State using the name "Forge Truck Centers LLC" and identifying Globe as its only governing person.

41. IL Truck Group LLC has never filed any Articles of Amendment with the Illinois Secretary of State changing its name to "Forge Truck Centers LLC."

42. IL Truck Group LLC has never filed an Application to Adopt an Assumed Name with the Illinois Secretary of State changing its name to "Forge Truck Centers LLC."

43. "Forge Truck Centers LLC" is not now, and never has been, registered as an Illinois Limited Liability Company.

44. "Forge Truck Centers LLC" is not now, and never has been, a legally identifiable entity.

45. Globe is a limited liability company organized on October 5, 2023 under Delaware law.

46. Globe maintains its principal place of business at 2503 West Haven Avenue, New Lenox, Illinois 60451.

47. Globe may be served with process through its Registered Agent, Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, Delaware 19904, or wherever it may be found.

48. Globe RE is a limited liability company organized on October 5, 2023 under Delaware law.

49. Globe RE is the intermediate Delaware holding entity that Forge's own counsel described in federal court as the LLC that sits between Globe on one hand, and its two individual Illinois owners, Starodub and DiGiuro on the other hand.

50. Globe RE holds real estate and other assets directly funded or indirectly by Forge's revenues.

51. Globe RE maintains its principal place of business at 17170 US-30, Hinckley, Illinois 60520.

52. Globe RE may be served with process through its Registered Agent, Cogency Global Inc., 600 South Second Street, Suite 404, Springfield, Illinois 62704-2542, or wherever it may be found.

53. Starodub is a natural person.

54. At all times relevant to this Complaint, Starodub was a citizen of, and resided in, the City of Dallas, Travis County, Texas.

55. Starodub may be served with process at 9883 Kingsway Avenue, Dallas, Texas 75230-4205, or wherever he may be found.

56. DiGiuro is a natural person.

57. At all times relevant to this Complaint, DiGiuro was a citizen of, and resided in, the City of Bartlett, DuPage County, Illinois.

58. DiGiuro may be served with process at 1708 Eastfield Drive, Bartlett, Illinois 60103-4900, or wherever he may be found.

59. Starodub and DiGiuro ultimately own the three-tier Delaware shell structure above involving Global, Global RE, and Forge.

60. Bordignon is a natural person.

61. At all times relevant to this Complaint, Bordignon was a citizen of, and resided in, the Village of Elburn, Kane County, Illinois.

62. Bordignon may be served with process at 1202 Pattee Avenue, Elburn, Illinois 60119-7835, or wherever he may be found.

63. Bordignon is Forge's sales manager.

64. Bordignon made material misrepresentations to Plaintiff Hacker in connection with the sale of the Truck.

65. Bordignon is not licensed as a mechanic, engineer, vehicle inspector, or commercial vehicle technician in any state.

66. Bordignon is Forge's sales manager who, in February 2024, personally refused to take back a defective truck sold to the *Roadarmel* plaintiffs—a fact stipulated as undisputed in federal court. [***Exhibit 3***, ¶¶11–13].

67. Whenever Forge allegedly performed any act or engaged in conduct, it means that Forge through its members, officers, agents, or employees performed or conducted the action(s) on Forge's behalf and under its authority.

***C. Redneck Defendants.***

68. Redneck is a limited liability company organized under Texas law. [***Exhibit 15***].

69. Redneck maintains its principal place of business at 4910 Hwy. 45, Wilmer, Texas 75172. [***Exhibit 16***].

70. Redneck may be served with process through its Registered Agent, Todd Stewart, 1674 Alsdorf Road, Ennis, Texas 75119, or wherever it may be found.

71. Redneck has been the subject of at least three prior Dallas County, Texas lawsuits arising from defective diesel work and fraudulent representations to customers. [***Exhibits 17, 18, 19*** (Redneck Dallas County Lawsuits)].

72. Stewart is a natural person.

73. At all times relevant to this Complaint, Stewart was a citizen of, and resided in, the City of Ennis, Ellis County, Texas.

74. Stewart may be served with process at 1674 Alsdorf Road, Ennis, Texas 75119, or wherever he may be found.

75. Stewart is the organizer, founding manager, and President of Redneck was personally involved in the deceptive and fraudulent conduct described below.

76. Benners is a natural person.

77. At all times relevant to this Complaint, Benners was a citizen of, and resided in, the City of Rockwall, Rockwall County, Texas.

78. Benners may be served with process at 1434 Open Bay Court, Rockwall, Texas 75087-0016, or wherever he may be found

79. Benners performed the purported "inspection" of the Truck on August 13, 2025—six days after the purchase was already consummated. [***Exhibit 9***].

80. Benners holds no license as a mechanic, commercial vehicle inspector, or any automotive or transportation trade in any state.

81. Whenever Redneck allegedly performed any act or engaged in conduct, it means that Redneck through its members, officers, agents, or employees performed or conducted the action(s) on Redneck's behalf and under its authority.

***D. DOES 1-25.***

82. DOES 1-25 are sued under fictitious names as their true names and capacities are yet unknown. Plaintiffs will seek leave to amend under Rule 15(a) to insert the true names and capacities of the DOE defendants once ascertained, and will dismiss any fictitiously named defendant whose joinder would destroy complete diversity. Plaintiffs will amend this complaint by inserting the true names and capacities of the DOE defendants once they are ascertained.

83. DOES 1-25 are natural persons or business entities who personally created, instituted and, with knowledge such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw Forge and Redneck's violative policies and procedures that are the subject of this Complaint. DOES 1-25 personally control Forge and Redneck and engaged in the illegal acts, policies, and practices used by Forge and Redneck and, thus, are personally liable for all wrongdoing alleged in this Complaint.

## III. JURISDICTION AND VENUE

84. This Court's subject matter jurisdiction arises under 28 U.S.C. § 1332 because the matter in controversy:

*(i)* exceeds the sum or value of $75,000, exclusive of interest and costs; and

*(ii)* is between citizens of different States.

85. Venue is proper in this federal district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred within this federal judicial district, and because each Defendant is subject to personal jurisdiction in Wisconsin at the time this action is commenced.

86. Supplemental jurisdiction for Mr. Hacker's state law claims exists under 28 U.S.C. § 1367.

87. Venue is appropriate in this federal district under 28 U.S.C. § 1391 because Forge regularly transacts business within, this federal judicial district, where the violations complained of occurred.

## IV.FACTS

### *A. The Corporate Structure of Forge's Enterprise.*

88. The commercial truck dealership operating today as "Forge Truck Centers" was purportedly incorporated on January 10, 2016, as CMS Diesel LLC by Cole Starodub and Michael DiGiuro, both then residing at addresses in Bloomingdale, Illinois. [***Exhibit 11***].

89. CMS Diesel LLC's registered agent was Starodub's father, Michael Starodub, at the same Bloomingdale address.

90. At CMS Diesel LLC's formation, both Starodub (then age 18) and DiGiuro (then age 23) were named as members.

91. On April 13, 2020, CMS Diesel LLC adopted the assumed name "IL Truck Group" under an application DiGiuro signed as its Manager. [***Exhibit 20***].

92. On July 13, 2021, DiGiuro signed Articles of Amendment which renamed CMS Diesel LLC as "IL Truck Group LLC." [***Exhibit 12***].

93. CMS Diesel LLC and "IL Truck Group LLC" are the same entity, Illinois File No. 05565162—not separate companies; its name changes are cosmetic.

94. From 2016 through at least early 2022, Starodub and DiGiuro were the direct individual managers of IL Truck Group LLC, signing annual reports in their own names.

95. Collectively attached as ***Exhibit 21*** are IL Truck Group LLC's 2016-2021 Annual Reports filed in the State of Illinois.

96. On or about October 5, 2023—after Forge accumulated a pattern of defrauding buyers and was under scrutiny—Starodub and DiGiuro organized Globe as a Delaware limited liability company.

97. Globe was subsequently substituted as IL Truck Group LLC's sole governing member in every public record to replace the appearance of Starodub and DiGiuro's direct personal management. [***Exhibits 13, 14, 22, 23***]. This restructuring interposed a Delaware shell layer specifically designed to insulate Starodub and DiGiuro from personal liability for Forge's ongoing fraudulent conduct.

98. On or about February 16, 2024, Starodub and DiGiuro organized Globe RE as a Delaware limited liability company.

99. On February 21, 2024, Starodub signed and filed on behalf of Globe an Application for Registration as a Foreign LLC in Texas for forge, listing Globe as its sole governing person. [***Exhibit 14***].

100. On June 6, 2024, Forge filed a Rule 7.1 Disclosure Statement in the *Roadarmel* Lawsuit stating that:

> Forge is a limited liability company organized under the laws of the State of Illinois. Forge is a wholly owned subsidiary of Globe Group LLC, a limited liability company organized under the laws of the State of Delaware. Globe Group is owned by another LLC organized under the laws of the State of Delaware, which in turn is owned by two individuals who are both Illinois residents."

[***Exhibit* 2** (Roadarmel Disclosure Statement)].

101. Globe RE is the "second unnamed Delaware LLC" referenced in Forge's Rule 7.1 Disclosure Statement in the *Roadarmel* Lawsuit (***Exhibit* 2**).

102. Starodub and DiGiuro  are the "two individuals who are both Illinois residents" who own the "second unnamed Delaware LLC" referenced in Forge's Rule 7.1 Disclosure Statement in the *Roadarmel* Lawsuit (***Exhibit* 2**).

103. Globe, Globe RE, and Forge all share the same address as their principal place of business—*i.e.*, 17170 U.S. Highway 30, Hinckley, IL 60520-6224.

104. On July 21, 2025, Forge filed a lawsuit against Mammoet USA South, Inc. in the United States District Court for the Southern District of Texas stled as *Forge Truck Centers LLC vs. Mammoet USA South, Inc.* Case No. 4:25-cv-03369 (S.D. Texas) ("*Mammoet* Lawsuit"). [***Exhibit* 24**].

105. Forge's Complaint in the *Mammoet* Lawsuit asserts that, "Forge has two members, both of whom are citizens of Illinois. [*Id.* at ¶1].

106. On August 7, 2025, Forge filed its Rule 7.1 Certificate of Interested Parties and Corporate Disclosure Statement in the *Mammoet* Lawsuit stating:

> Forge Truck Centers, LLC, is a limited liability company organized under Illinois law. **Its sole members are Cole Starodub and Michael DiGiuro, both citizens and residents of Illinois. Forge has no parent corporation** and no publicly held corporation that owns 10% or more of its stock.

[***Exhibit** 25*].

***B. The Fraud Scheme: How Forge Operates.***

107. Forge's business model is built around a repeating cycle of deception:

*(i)* **Acquisition:** Forge purchases heavily used, high-mileage commercial trucks "as-is" at industrial auction houses and by other means; the trucks it buys are from fleet disposals, oilfield operations, and other heavy commercial use environments and were retired precisely because they had accumulated excessive wear, structural damage, and mechanical failures.

*(ii)* **Cosmetic preparation:** Forge performs cosmetic work—cleaning, painting, polishing, detailing—to make the trucks appear presentable without repairing what it knows are underlying material mechanical and structural defects that make the trucks unusable for their designed purpose.

*(iii)* **Scripted misrepresentations:** Forge's sales personnel uniformly represent to prospective buyers that its trucks have undergone a

"full inspection" and are in "excellent condition," "ready to hit the road running," and suitable for the buyer's specific stated purpose even though it knows those statements are flatly false.

*(iv)* **Fabricated inspection evidence:** When buyers inquire about inspection history, Forge provides false assurances—in some cases a cheap post-sale state windshield inspection—as "proof" of a thorough pre-sale mechanical inspection.

*(v)* **Refusal to rescind:** When buyers discover the material defects and demand refunds, Forge refuses. Bordignon personally handles these refusals, deflecting and denying until the buyer either absorbs the loss or retains counsel.

*(vi)* **Profit extraction:** The margin between the distressed auction price Forge paid and the inflated price Forge received—after concealing the true condition—represents pure fraud profit. These profits have funded luxury vehicles, real estate, and shell entity structures for Starodub and DiGiuro.

108. Forge prominently displays on its website, **forgetruckcenters.com**: *"INVENTORY INSPECTION – The details are so important which is why all our trucks go through a full inspection."* [***Exhibit 26*** (Forge Website)]. This representation is made to every prospective buyer in every state where Forge markets trucks. It is false.

## III. Forge's Pattern of Fraud.

### *A.* The *Roadarmel* Lawsuit.

109. On or about February 8, 2024—approximately eighteen months before the sale to Hacker—Roadarmel Construction Inc. ("Roadarmel"), a Montana construction company, and its owner, and Jack Roadarmel, purchased a 2018 Mack truck from Forge for $149,700. [***Exhibit 1,*** ¶¶7–18].

110. Before the sale, the *Roadarmel* plaintiffs—like Hacker—read and relied upon Forge's website representations that "all our trucks go through a full inspection." **[*Exhibit 1,*** ¶8**; *Exhibit* 2,** ¶¶3–4**]**.

111. The *Roadarmel* plaintiffs also relied on representations by Forge's salesman Clayton Nessling, who told them the truck was "in excellent condition," had "been through their shop and had been checked out with no issues," and was a "sound truck, ready to hit the ground running with no issues." [***Exhibit 1,*** ¶¶12–14]. Roadarmel told Nessling they needed "a sound truck, ready to hit the ground running with no issues"—the exact same type of intended use disclosure that Hacker made to Bordignon. [***Exhibit*** 1, ¶14].

112. Five days after delivery, on February 20, 2024, Roadarmel discovered metal filings in the front differential, chunks of metal in the bottom of the differential, and a leaking right front wheel seal—all indicating serious mechanical damage. The truck's check plugs showed they had not been removed "for some time." There was also a dashboard engine code. [***Exhibit 1,*** ¶¶21–23; ***Exhibit 4*** (Roadarmel Pretrial Statement), pp. 3–4].

113. On February 20, 2024, Roadarmel called Forge and spoke with sales manager Vince Bordignon. [***Exhibit 3***, ¶11]. Roadarmel explained the defects and offered to ship the truck back to Illinois at its own expense in exchange for a full refund. [*Id.* at ¶12.] Forge declined. [*Id.* at ¶12.] Forge stipulated that these facts are undisputed in federal court.

114. Roadarmel sued Forge in Montana state court. Forge removed the case to the United States District Court for the District of Montana, Butte Division, *Roadarmel Constr., Inc. v. IL Truck Grp., LLC*, Case No. CV-24-38-BU-BMM, on May 30, 2024. which proceeded through discovery and was set for a June 2025 jury trial.

115. On January 22, 2025, Forge moved for a settlement conference in the *Roadarmel* lawsuit and, on February 7, 2025, was settled before Magistrate Judge John Johnston. The formal stipulation of dismissal with prejudice was filed April 23, 2025 noting the case was dismissed with prejudice "as having been fully settled upon the merits." [***Exhibit 5*** (Stipulation of Dismissal)]

116. Forge paid money to resolve a federal lawsuit based on the same misrepresentation—"fully inspected," "ready to hit the road running"—that it then repeated to Plaintiff Hacker exactly six months later.

***B. The Gunn Action—The Same Scheme, Litigated in Texas.***

117. In a separate matter, on December 17, 2025, RW Gunn LLC filed suit against Forge Truck Centers LLC in the 14th Judicial District Court of Dallas County, Texas. *RW Gunn LLC v. Forge Truck Ctrs. LLC*, No. DC-25-23125 (14th Jud. Dist. Ct., Dallas Cnty., Tex.). [***Exhibit 6***.].

118. Gunn alleged that Forge sold him a truck from which the entire diesel emissions aftertreatment system—the DEF (Diesel Exhaust Fluid) system—had been removed and concealed. Forge and Bordignon represented the truck as being in "good condition" and having passed inspection. The Gunn complaint alleged:

> It is simply impossible to believe that a licensed dealer…would be unaware that it was in possession of a truck without an exhaust aftertreatment system. Defendant knowingly and intentionally misrepresented the quality and characteristics of the Vehicle in order to trick Plaintiff into buying it."

*Id.* (Emphasis added).

119. Forge failed to respond. In March 2026—approximately seven months after Hacker purchased the Truck—that court entered a default judgment against Forge. The court found: *"Defendant's deceptive conduct was engaged in knowingly and intentionally, in violation of the Texas Deceptive Trade Practices Act."* [***Exhibit 7*** (Gunn Default Judgment)].

120. Forge settled a federal lawsuit alleging identical fraudulent conduct 181 days before it sold Hacker a truck with more than 60 defects. Forge was then sued in Texas for the same conduct four months after that sale, and a default judgment was entered against it in March 2026. The individual defendants—Starodub, DiGiuro, and Bordignon—knew of the Roadarmel outcome and proceeded anyway.

*C. The Target Contractors Action—A Third Buyer, the Same Scheme.*

121. Forge's pattern did not end with Hacker. On May 18, 2026, Target Contractors, LLC sued Forge Truck Centers LLC in the 134th Judicial District Court of Dallas County, Texas. *Target Contractors, LLC v. Forge Truck Centers, LLC*, No. DC-26-09064 (134th Dist. Ct., Dallas Cnty., Tex.). [***Exhibit 8***.]

122. Target Contractors alleged that on or about December 8, 2025, it purchased a 2020 Kenworth W900 from Forge for $186,500, which Forge advertised as being in "clean" condition. [*Id.* at ¶¶9, 24.]

123. Approximately 4,960 miles after the purchase, the truck suffered a catastrophic engine failure. A post-failure inspection by a third-party engine shop revealed that the truck's emissions control system had been intentionally disabled, or "deleted"—the same species of concealed emissions tampering Forge was found to have committed against Gunn less than a year earlier. Target Contractors alleges Forge had actual knowledge that the truck had been deleted and that this fact was actively hidden from the buyer. [*Id.* at ¶11].

124. Target Contractors asserts claims against Forge for violations of the Texas Deceptive Trade Practices Act, fraud and fraudulent inducement, and breach of contract and warranty, seeking $282,742 in actual damages plus treble and exemplary damages and attorneys' fees. [*Id.* at ¶24].

125. By the time Target Contractors filed suit, Forge had already settled the Roadarmel action and suffered a default judgment in *Gunn*—both for materially

identical conduct—and had sold Hacker the Truck at issue in this case using the identical script.

126. Three unrelated buyers, fromk three different states, three lawsuits, one scheme: Forge sells trucks it has not genuinely inspected, conceals serious defects (frequently involving tampered emissions systems), and represents the trucks as "clean," "good condition," "thoroughly inspected," and "ready to go to work" for their intended purpurpose all to induce a profitable sale.

***D. The Sale of the Plaintiffs' Truck.***

127. In or about July and August 2025, Plaintiff Hacker found the Truck—a 2006 Peterbilt 379 tractor, VIN 1XP5PBEX66N892655—listed for sale on Forge's website. [***Exhibit 27***].

128. Hacker contacted Forge and spoke with Bordignon. Hacker specifically told Bordignon he needed the Truck for long-distance heavy-haul operations involving loads exceeding 100,000 pounds—and that his existing truck could not support that weight. This was a specific, disclosed particular purpose communicated to Forge before the sale.

129. Bordignon told Hacker that the Truck was in **"good condition"** and **"ready to go to work"** for the specific purposes Hacker expressly described. Bordignon represented that the Truck had been **"thoroughly inspected"** and this inspection confirmed the Truck was in good condition and immediately suitable for heavy-haul work upon delivery.

130. Bordignon also told Hacker the Truck had a "clean title" and represented the Truck's prior history in terms consistent with "light use" when, in fact, Bordignon knew the Truck had at least six prior owners across five states, including use in Wyoming cattle hauling and Texas oilfield services operations—the most mechanically demanding commercial applications for heavy trucks.

131. On August 7, 2025, based on Bordignon's representations and Forge's website assurances, Hacker and Highway Legends LLC agreed to purchase the Truck for $71,046.17.

132. Legends obtained a purchase-money loan, which Hacker personally guarranteed, to finance the Truck's acquisition; Plaintiffs have been forced to pay interest on this loan since August 15, 2025.

133. On August 15, 2025, Forge physically delivered the Truck to Plaintiffs at a small truck stop in Cleveland, Wisconsin, about 4 miles from Plaintiffs shop.

134. Forge's driver who delivered the Truck to Plaintiffs did not speak English.

135. Forge's driver who delivered the Truck on a "lowboy trailer," unloaded it, and then promptly got back into the delivery truck and left the scene without allowing Plaintiffs any opportunity to inspect the Truck.

136. Hacker never accepted delivery of the Truck.

137. Hacker got into the Truck, started it, and then began to drive it to his shop; within a half mile the Truck's dashboard lit up with warning lights and physically behaved in a way Hacker understood to signal a serious problem(s) so he

immediately pulled over and texted and called Bordignon who told Hacker to take the Truck to a mechanic and have it looked at.

138. Bordignon told Hacker he would have to "get a hold of (his) manager" to see if Forge would cover any problems the Truck had, but that the Truck "would have never passed our inspection" if it had any problems.

139. Hacker did as Bordignon instructed and immediately took the Truck to to Nelson Truck & Equipment Service, Inc. ("Nelson") in Manitowoc, Wisconsin for inspection.

140. Plaintiffs had a heavy haul load scheduled for August 18, 2025, which they had to cancel because the Truck was unfit for operation and lost approximately $50,000 for that cancelled job.

141. Hacker subsequently reported to Bordignon the results of Nelson's Truck inspection (*see, infra* at § VI and ***Exhibit 8***) including that 6 sensors were bad on the motor and a failed injector; Bordignon again told Hacker he would "get a hold of (his) manager" to see if Forge would cover any problems but that the Truck "would have never passed our inspection" if it had any problems.

142. Bordignon then provided Hacker with a copy of the "inspection" report associated with the Truck sale—it a Texas Commercial Vehicle ("CW") windshield inspection performed on August 13, 2025—six days after the purchase contract was signed. [***Exhibit 9*** (Texas Inspection Report)].

143. Bordignon told Hacker that ***Exhibit 9*** proves "everything was fine (with the Truck) while Forge had it."

144. Bordignon also told Hacker that ***Exhibit 9*** proves "[i]f there was any issues (sic) with it while we had [the Truck], it would not have passed the state inspection."

145. Bordignon also told Hacker ***Exhibit 9*** proves the Truck had "no codes or issues (when Forge) got it state inspected."

146. Bordignon also told Hacker the Truck "was driven to a third-party facility to be inspected (and) if the frame is cracked, they would have failed it."

147. Redneck is the "third-party facility" Bordignon was referring to with Hacker as the entity who "inspected" the Truck and "would have failed it" "if the frame is cracked" or if the Truck had "any other issues."

148. The CW inspection costs $40 and tests windshield integrity, wipers, horn, lights, parking brake, and seat belts.

149. The CW is not a commercial vehicle safety inspection as under 49 C.F.R. Part 396 Appendix A which Forge represented to Hacker it performed.

150. The CW inspection does not examine the engine, transmission, frame, fuel system, steering, suspension, brakes under load, or any powertrain component.

151. The CW inspection cannot detect, and did not detect, any of the defects subsequently Nelson identified. [***Exhibit 10*** *cf.* ***Exhibit 9***.]

152. Moreover, the Texas inspection report attached as ***Exhibit 7*** reflects VIN **"**1XP5PBEX66N892555**"**—not the Truck's actual VIN, which is 1XP5PBEX66N892655. The VINs differ in the 15th digit ("5" vs. "6").

153. Forge billed Plaintiffs the $40 inspection fee—charging for a post-sale cosmetic inspection that Forge then presented it as "proof" of the Truck's pre-delivery condition in refusing to honor Plaintiffs' rescission demands.

154. Since then, Hacker has tried texting and calling Bordignon and Forge but they refuse to respond, pay for the Truck's repairs, or rescind the sale.

155. Plaintiffs have been accruing loan interest and storage fees daily since August 15, 2025 for a truck that is legally incapable of operating on any public road.

## VI. THE TRUCK'S TRUE CONDITION: 60+ DEFECTS, FEDERAL OOS STATUS

156. Nelson Truck & Equipment conducted a thorough professional inspection of the Truck. Nelson identified the following defects, among others [***Exhibit* 10** (Nelson Defect List)]:

*(i)* **Frame cracks on both the driver and passenger sides**—bilateral frame failure requiring immediate structural repair;

*(ii)* **Bypassed engine cooling system**—the cooling system was manually bypassed to conceal existing cooling failures;

*(iii)* **Multiple fuel system leaks**;

*(iv)* **Defective steering components**;

*(v)* **Inoperable or deficient braking systems;**

*(vi)* **Defective suspension components**; and

*(vii)* **60 additional mechanical, structural, and safety defects** catalogued in the Nelson report.

157. Each of the following defects would independently have caused the Truck to fail a periodic inspection under 49 C.F.R. pt. 396, app. A (Minimum Periodic Inspection Standards), and each independently meets the mandatory Out-of-Service ("OOS") condition under 49 C.F.R. Part 396, Appendix A, and the Commercial Vehicle Safety Alliance ("CVSA") 2025 Out-of-Service Criteria:

*(i)* **Frame cracks on both sides**—49 C.F.R. pt. 396, app. A, ¶9(a); CVSA OOSC Item 9(a): *any* cracked, broken, loose, or sagging frame member fails inspection, and a frame crack of the location and extent found here meets the CVSA out-of-service criteria;

*(ii)* **Fuel system leaks**—49 C.F.R. pt. 396, app. A, ¶4: *any* visible fuel leak fails inspection and meets the out-of-service criteria;

*(iii)* **Steering component defects**—49 C.F.R. pt. 396, app. A, ¶7; CVSA OOS: cracked or defective steering components fail inspection and meet the out-of-service criteria;

*(iv)* **Brake defects**—49 C.F.R. pt. 396, app. A, ¶1; CVSA OOSC § 1(b): steering-axle brake defects fail inspection and meet the out-of-service criteria;

*(v)* **Suspension defects**—49 C.F.R. pt. 396, app. A, ¶8: axle displacement, broken springs, and related defects are mandatory OOS conditions.

158. Bordignon admitted to Hacker that any of the above defects would independently have caused the Truck to fail a periodic inspection and render it unfit for sale or use for the Truck's intended purpose.

159. The Truck could not have passed a lawful 49 C.F.R. Part 396 Annual Inspection—the inspection required for every commercial motor vehicle operating in interstate commerce—in its condition at the time of sale.

160. The Truck's frame cracks alone, on both sides, would require an immediate OOS order by any qualified DOT enforcement officer.

161. The Truck was legally prohibited from operating on any public road at the time Bordignon represented it as "ready to go to work" for 100,000-pound heavy-haul operations because those loads—even lesser loads—would have stressed the already-cracked frame to the point of catastrophic structural failure.

162. A loaded 100,000-pound heavy-haul truck with bilateral frame cracks is not merely a financial loss for the buyer—it is an active danger to every motorist sharing the road.

163. The bypassed cooling system is particularly egregious because bypassing a cooling system is not the result of age or wear—it is an intentional mechanical modification that requires deliberate human action.

164. The Defendants intentionally removed or disabled the Truck's cooling system components to conceal its existing failures.

165. Forge knew the Truck's cooling system components were removed or disabled but concealed it and never disclosed it.

166. A bypassed cooling system could not have been discovered through casual observation; it requires an inspection.

## VII. REDNECK'S "INSPECTION"—CONSPIRACY TO PERPETRATE FRAUD.

167. Redneck was organized on January 14, 2013, by founding managers Todd Stewart, Michael Stonewall, and Jerry Scott, all at 1674 Alsdorf Road, Ennis, Texas. [***Exhibit 15*** (Redneck Certificate of Formation)].

168. By 2019, Stewart and Scott remained as the LLC's Managing Member and Member, respectively. [***Exhibit 28*** (Redneck 2019 PIR)].

169. As of 2024, Stewart was filing Redneck's franchise tax reports as "President," and the Section A disclosure of officers and members was left entirely blank—a deliberate omission to obscure its ownership after three prior lawsuits. [***Exhibit 16*** (Redneck 2024 PIR)].

170. Before the purported "inspection" of the Truck, Redneck was the subject of at least three separate Dallas County, Texas lawsuits arising from fraudulent and defective diesel work:

*(i)* *Allen v. Redneck Diesel Performance, LLC,* No. DC-22-04976 (193d Jud. Dist. Ct., Dallas Cnty., Tex.)—In which Stewart told a customer, after the customer nearly died in a vehicle Redneck had worked on: **"pipe down sir, you could've fucking rolled over six times and died…doesn't matter to me."** [*Exhibit 17*].

(ii) *Finley v. Redneck Diesel Performance, LLC,* No. DC-23-21414 (162d Jud. Dist. Ct., Dallas Cnty., Tex.*)*—Arising from additional defective work and fraudulent representations. [***Exhibit 18***].

(iii) *Nobles v. Redneck Diesel Performance, LLC,* No. DC-18-12778 (193d Jud. Dist. Ct., Dallas Cnty., Tex.)—A third action in Dallas County for similar conduct. [***Exhibit 19***].

171. Benners is listed as Redneck's inspector for the Truck. [***Exhibit 9***].

172. Benners is not a licensed mechanic, certified truck inspector, or credentialed commercial vehicle technician in any state.

173. Benners is unqualified under 49 C.F.R. § 396.19 to perform a federal Annual Inspection—a regulation requiring inspectors to understand Part 393 safety standards and be capable of identifying defective components.

174. Benners cannot perform a legally valid DOT commercial vehicle inspection.

175. Despite Benners' lack of qualifications, Forge and Bordignon directed Plaintiffs to rely on Redneck's "inspection" as confirmation of the Truck's condition.

176. Forge's referral of the Truck to Redneck—a shop with three prior lawsuits, operated by unqualified personnel—instead of a qualified Peterbilt service center or DOT qualified inspector was not a mistake; it was the selection of a compliant, unqualified "inspector" who would provide the appearance of due

diligence without the substance.

177. The $40 Texas CW windshield inspection performed August 13, 2025—six days after the sale—was not a "thorough inspection" ("8/13/25 Inspection").

178. The 8/13/25 Inspection was not a "full inspection."

179. The 8/13/25 Inspection was not an inspection of the Truck's mechanical systems at all.

180. The 8/13/25 Inspection was not an inspection of the Truck's visible structural deficiencies that make it unsafe or usable for the Truck's purpose.

181. The 8/13/25 Inspection report was a paperwork artifact generated after the fraud was complete, but before delivery, to give Forge a document it could wave at buyers to deflect refund demands.

182. When Forge told Hacker the Truck had been "thoroughly inspected" and the 8/13/25 Inspection proved the Truck was in good condition, Forge knew that representation was false.

## VIII. THE FINANCIAL DEVASTATION TO PLAINTIFFS.

183. As a direct result of Defendants' conduct, Plaintiffs have suffered and continue to suffer the following damages:

*(i)* The full purchase price paid for the Truck;

*(ii)* All loan origination costs and interest accruing on the purchase money loan from August 15, 2025 to the present and continuing;

*(iii)* All storage fees charged by Nelson Truck & Equipment from August 15, 2025 to the present and continuing;

*(iv)* Lost business revenue and profits from heavy-haul operations Hacker was unable to conduct due to the Truck's inoperability;

*(v)* The cost of Hacker's existing truck, which Hacker was prepared to retire upon putting the Truck into service;

*(vi)* Costs of inspection, evaluation, and professional consultation;

*(vii)* All damages flowing from Plaintiffs' inability to fulfill existing or anticipated hauling contracts; and

*(viii)* Consequential and incidental damages as proven at trial.

**IX. DEFENDANTS' PERSONAL ENRICHMENT FROM THE FRAUD.**

184. While Plaintiffs absorb the financial devastation of an inoperable truck, accruing daily interest and storage charges, Starodub and DiGiuro have personally enriched themselves through the proceeds of this and other fraudulent truck sales.

185. Public records reflect the following assets held by Starodub, whose wealth is entirely funded by Forge's truck sales:

*(i)* Current residence at 541 Kensington Court, Hinsdale, IL 60521—a Chicago suburb with a median home value of $1,181,159;

*(ii)* **2026 Tesla Model Long Range** (VIN 7SAYGDED4TA464996, base price $39,990, titled October 2025—during the very period Plaintiffs were accruing daily losses on the Truck);

*(iii)* **2024 Mercedes-Benz GLE 350 4MATIC** (VIN 4JGFB4FB9RA997975, base price $62,650, financed through Mercedes-Benz Financial);

(iv) **2021 Tesla Model Standard Range Plus** (VIN 5YJ3E1EA7MF995163, base price $37,990, financed by Wells Fargo)

(v) **Prior: 2022 Mercedes-Benz G63 AMG** (VIN W1NYC7HJ3NX437353, base price $179,000)—registered at Forge's own Hinckley, IL business address;

(vi) **Prior: 2021 Mercedes-Benz GLE 63 AMG 4MATIC** (VIN 4JGFB8KB9MA377102, base price $113,950)—also registered at Forge's Hinckley, IL business address;

(vii) Additional prior vehicles including a 2019 Ford F-150 Raptor ($55,840), a 2019 Jeep Grand Cherokee Trackhawk ($87,150), and others.

186. Starodub is also the manager of additional business entities including Apex Motor Cars LLC, Industrico Auctions LLC, Nugen Transport LLC, and Black Arrow Holdings LLC—all registered at or associated with the Bloomingdale, IL address that was also Forge's historic registered address.

187. DiGiuro, meanwhile, owes the Internal Revenue Service a federal tax lien in excess of $3,500,000 while remaining a co-owner of Forge and the Globe Group entities that hold Forge's assets.

188. DiGiuro's simultaneous existence of a $3.5 million IRS debt and continued operation of a multimillion-dollar truck dealership through layered shell entities is itself evidence of fraudulent asset protection.

189. Public records reflect examples of the following assets held by DiGiuro whose wealth is also entirely funded by Forge's truck sales:

*(i)* Current residence at 1708 Eastfield Drive, Bartlett, IL 60103-4900—a Chicago suburb—valued at approximately $875,000 or double the median home value for that area;

*(ii)* **2025 Ford Van Model T-350 HD** (VIN 1FTBF4X88SKA98499, base price $54,800, titled October 2025 and registered at Forge's Hinckley, IL business address—during the very period Plaintiffs were accruing daily losses on the Truck);

*(iii)* **2025 Cadillac Escalade** (VIN 1GYS9SR95SR175591, base price $165,500, titled March 2025 and registered at Forge's Hinckley, IL business address—during the very period Plaintiffs were accruing daily losses on the Truck);

*(iv)* **2025 Ford F150** (VIN 1FTEW3LP8SKE90239, base price $51,915, titled December 2025);

*(v)* **2024 Range Rover SE** (VIN SAL1L9FU4RA412481, base price $90,700, titled December 2025);

*(vi)* **2023 Lamborghini Huracan** (VIN ZHWUB6ZFXPLA24217, base price $239,000, titled October 2023);

*(vii)* **2022 Porsche 911 GT3 Touring** (VIN WP0AC2A93NS269707, base price $161,100, titled October 2023);

*(viii)* **2023 Cadillac Escalade** (VIN 1GYS4NKL9PR114094, base price $97,095, titled September 2022 and registered at Forge's Hinckley, IL business address); and

*(ix)* Additional prior vehicles including a **2023 Porsche Cayenne Platinum Edition** ($80,700), two **2019 Harley-Davidson** motorcycles ($27,089/ea.), a **2013, 2006, and 2003, Harley-Davidson** motorcycles, and other assets.

190. Not one penny of the fraud profits described above has been used to compensate victims of Forge's systematic deception.

191. Plaintiff Hacker got a cracked-frame truck parked in Wisconsin, accruing daily storage charges.

192. Forge is the fictitiously named alter ego of Globe, Globe RE, Starodub, and DiGiuro. These entities and individuals:

*(i)* share the same addresses;

*(ii)* comingle funds and assets;

*(iii)* have no genuine corporate separateness;

*(iv)* interposed the Globe Group entities solely to obstruct future judgments after Forge's fraudulent pattern became the subject of litigation; and

*(v)* operate the entire enterprise for the direct personal benefit of Starodub and DiGiuro.

193. Adherence to the fiction of corporate separateness would sanction fraud and promote injustice.

194. Starodub and DiGiuro are personally liable for all Forge's obligations.

195. Bordignon acted as agent of Forge, Globe Group LLC, Globe Group Real Estate LLC, Starodub, and DiGiuro within the scope of his employment and authority.

196. Forge, Globe Group LLC, Globe Group Real Estate LLC, Starodub, and DiGiuro are each vicariously liable for Bordignon's fraudulent acts.

197. Redneck acted as an agent of Forge in performing the purported inspection at Forge's direction. Forge is vicariously liable for Redneck's conduct.

198. Defendants have engaged in a repeated, systematic pattern of fraudulent truck sales: the *Roadarmel* case (settled February 2025), the *Gunn* case (default judgment March 2026 but later vacated and presently being litigated), the Hacker transaction (August 2025), and the *Target Contractors* case (filed May 2026). Each of these lawsuits involve the same misrepresentations by the Forge Defendants—"fully inspected," "ready to go to work," or a "clean" truck, or had systems manipulated to conceal material defects—for trucks that were not inspected, not clean, and were not ready.

199. On <u>June 30, 2026</u>, in *Forge Truck Centers LLC vs. Mammoet USA South, Inc.* Case No. 4:25-cv-03369 (S.D. Texas)—a lawsuit Forge filed in July 2025—Forge's attorney, Akerman LLP, filed a Motion to Withdraw and in its sworn Declaration in support noted that:

> During the fall of 2025, [Forge] stopped paying Akerman LLP for its services **on this and <u>other</u> <u>matters</u>**.... counsel has made **several demands for payment, but to date has not received payment**.
>
> (Emphasis added) [***Exhibit 29***, ¶¶2, 3].

200. On <u>July 14, 2026</u>, the Court in the *Mammoet* lawsuit granted the Motion to Withdraw and allowed Forge "60 DAYS to obtain new counsel" otherwise the court would dismiss the case. [***Exhibit 30***, ¶¶2, 3].

201. To date, no attorney or law firm has appeared on Forge's behalf in the *Mammoet* lawsuit.

202. Without injunctive relief, Defendants will continue to harm additional buyers of commercial trucks. Injunctive relief is necessary to prevent irreparable harm to the public and to future victims of this scheme.

203. Plaintiffs seek a permanent injunction prohibiting Defendants from: (a) representing any commercial truck as "inspected," "thoroughly inspected," or "fully inspected" without providing contemporaneous, pre-sale documentation of a qualified commercial vehicle inspection meeting 49 C.F.R. Part 396 Appendix A standards; (b) using any post-sale inspection as purported evidence of pre-sale condition; and (c) representing a truck's condition as "good," "excellent," or "ready to work" without a qualifying DOT-standard inspection on file.

## V. CAUSES OF ACTION

**COUNT I—INTENTIONAL MISREPRESENTATION (COMMON-LAW FRAUD)**
*(Against Forge, Globe, Globe RE, Starodub, DiGiuro, & Bordignon)*

204. The preceding Factual Allegations are incorporated by reference.

205. Defendants made the following materially false representations of existing facts to Plaintiffs:

(a) The Truck was "thoroughly inspected" prior to sale;

(b) The Truck was in "good condition;"

(c) The Truck had no mechanical problems that would make it inoperable under any state or federal laws or regulations;

(d) The Truck had no structural problems that would make it inoperable under any state or federal laws or regulations;

(e) The Truck was immediately "ready to go to work" for OTR heavy-haul operations exceeding 100,000 pounds;

(f) The Truck had a "clean title" and favorable history; and

(g) The $40 CW windshield inspection confirmed the Truck's prior "thorough" mechanical and structural inspection.

206. The Defendants knew each of their foregoing representations was false when conveying them to Plaintiffs or otherwise acted with reckless disregard concerning whether these representations were false.

207. The Truck had, *among other things*, serious bilateral frame cracks, a bypassed cooling system, fuel leaks, defective steering and braking, and 60+ additional defects—all present and discoverable at the time of sale.

208. The Forge Defendants intended that Plaintiffs rely on their false representations to induce them into buying the Truck and paying Forge's desired purchase price.

209. Plaintiffs justifiably relied on these false representations and others when deciding to buy the Truck and pay Forge's desired purchase price.

210. Forge's gospel about its integrity, expertise, "high quality" heavy-haul trucks "thoroughly inspected" by its team of "trusted experts," and more, is blazed chapter and verse after chapter and verse, page after page, throughout its website and social media with fake testimonials and false claims and assurances that Forge:

(a) "specialize[s] in providing high-quality Class 8 trucks, vocational vehicles, and specialized trailers to businesses across the country;"

(b) is not just a dealership, but rather it is Plaintiffs' "partner invested in [their] success;"

(c) "ensures you're never far from the truck you need and the support you can trust;"

(d) "understands the demands of specialized trucking and is committed to helping you find the right vehicle with minimal downtime and maximum value;"

(e) is a "trusted destination for quality pre-owned heavy-duty trucks across the U.S.;"

(f) "all [its] trucks undergo a thorough intake process" with "No games, no guesswork—just great trucks at honest prices;"

(g) is a "Trusted Service backed by a team that knows the industry inside and out" "no pressure, just real support."

211. Forge's webpages are dedicated to explaining why Mr. Hacker should "**Buy Heavy Haul Trucks from Forge**" (emphasis in original):

> "Built for Big Jobs. Backed by Experts"
>
> When you're moving oversized loads or extremely heavy cargo, having just any truck won't cut it—you need one specifically engineered for the task. Heavy haul trucks are designed with *reinforced frames*, *specialized suspensions*, and *high-capacity drivetrains that can handle intense demands* ***without sacrificing safety*** or performance.
>
> While they may look similar to standard day cabs, heavy haulers are in a class of their own. These trucks are equipped with stronger axles, elevated ride heights, and ***safety features like warning lights*** to alert others on the road. Their gearing and braking systems are fine-tuned for control under pressure, and their torque-heavy engines are built to pull weight, not just maintain speed.
>
> At Forge Truck Centers, we understand that performance matters. That's why we don't just list trucks—we match hardworking professionals with *equipment they can trust*.

# Why Buy Heavy Haul Trucks from Forge?



- **Thorough Intake Proccess**
  The details are crucial, which is why all our trucks undergo a thorough intake process.
- **Fair, Competitive Pricing**
  No games, no guesswork—just great trucks at honest prices.
- **Nationwide Delivery**
  From Texas to Illinois and beyond, we'll deliver straight to your location.
- **Easy Financing Options**
  Get pre-approved online and finance your truck with confidence.
- **Trusted Service**
  Backed by a team that knows the industry inside and out.




## Built for Big Jobs. Backed by Experts.

When you're moving oversized loads or extremely heavy cargo, having just any truck won't cut it—you need one specifically engineered for the task. Heavy haul trucks are designed with reinforced frames, specialized suspensions, and high-capacity drivetrains that can handle intense demands without sacrificing safety or performance.

While they may look similar to standard day cabs, heavy haulers are in a class of their own. These trucks are equipped with stronger axles, elevated ride heights, and safety features like warning lights to alert others on the road. Their gearing and braking systems are fine-tuned for control under pressure, and their torque-heavy engines are built to pull weight, not just maintain speed.

At Forge Truck Centers, we understand that performance matters. That's why we don't just list trucks—we match hardworking professionals with equipment they can trust.

## Let's help you track down the right heavy haul truck built to handle your toughest jobs.

At Forge Truck Centers, we're here to help you find the heavy haul truck that fits your specific workload and expectations—no guesswork, no pressure. Our inventory includes a range of condition options so you can choose what works best for your budget and needs.

Our goal is to help you buy with confidence. That's why all our trucks undergo a thorough intake process.



212. Bordignon and others at Forge also repeatedly preached Forge's same untrue "gospel" (*supra*) on its website every time they spoke with Mr. Hacker by telephone to reinforce his trust and reliance on those falsehoods to induce him into buying the Truck *and* paying Forge's inflated price for it.

213. And, when Bordignon and others at Forge could not reach Mr. Hacker to verbally preach Forge's gospel, they texted and emailed it to him again, and again, to reinforce his trust and reliance on those falsehoods to induce him into buying the Truck *and* paying Forge's inflated price for it.

214. Plaintiffs' reliance was reasonable because Bordignon's repeated representations that he and the other Forge Defendants possessed specific expertise and experience in the over-the-road trucking business and specifically understood the critical importance owner-operators place on operating safe, reliable, and good quality heavy-haul Trucks and the serious financial and other consequences suffered when they do otherwise.

215. The Forge Defendants repeated to Hacker their falsehoods about the Truck's unusable, worthless condition, their expertise, intentions, honesty, and trustworthiness and he:

*(i)* believed it;

*(ii)* Trusted it;

*(iii)* Relied on it to form his decision to buy the Truck;

*(iv)* Relied on it to form his decision about the Truck's price; and,

*(v)* Hacker and Legends were financially *damaged* when Defendants delivered the undrivable, unusable, and illegal Truck on August 15, 2025.

216. As a direct and proximate result, Plaintiffs have suffered the damages described above.

217. Defendants' fraud was extraneous to the parties' bargain: Forge concealed its practice of selling trucks it had never inspected, and concealed the Roadarmel Lawsuit then resolved against it for the identical misrepresentation—facts about Forge's own business rather than about the Truck's characteristics—so the economic loss doctrine does not bar this claim. *See Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶42.

218. Defendants' fraud was willful, wanton, acted maliciously toward Plaintiffs and in intentional disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages under Wis. Stat. § 895.043(3).

## **COUNT II—FRAUDULENT CONCEALMENT**

*(Against Forge, Globe, Globe RE, Starodub, DiGiuro, Bordignon)*

219. Plaintiffs reallege and incorporate all prior paragraphs.

220. Defendants had a duty to disclose to Plaintiffs all material facts about the Truck's condition, including: the bilateral frame cracks; the bypassed cooling system; the multiple federal OOS-triggering defects; the Truck's oilfield service history; the fact that no pre-sale inspection was performed; and the pending and resolved litigation against Forge for identical conduct.

221. Defendants actively concealed these facts through cosmetic preparation of the Truck, affirmative misrepresentations about its inspected condition, and the provision of a post-sale windshield inspection as false confirmation of the Truck's condition.

222. Plaintiffs were ignorant of these concealed facts and would not have purchased the Truck had they known the truth.

223. Plaintiffs suffered damages as a direct result of this concealment. The statute of limitations was tolled by Defendants' active concealment

## COUNT III—NEGLIGENT MISREPRESENTATION

*(Against Forge, Starodub, DiGiuro, Bordignon, Redneck, Stewart, Benners)*

224. Plaintiffs reallege and incorporate all prior paragraphs.

225. Defendants, in the course of their business and for guidance of Plaintiffs in a commercial transaction, supplied false information—including that the Truck was "thoroughly inspected" and in "good condition"—without exercising reasonable care in obtaining or communicating that information.

226. Defendants failed to exercise reasonable care or competence in making representations about the Truck's condition, given that no genuine pre-sale inspection was ever performed and the Truck had obvious, serious mechanical and structural defects.

227. Plaintiffs justifiably relied on this information and suffered pecuniary loss as a result.

## <u>COUNT IV</u> — BREACH OF EXPRESS WARRANTY

*(Against Forge, Starodub, DiGiuro, Bordignon)*

228. Plaintiffs reallege and incorporate all prior paragraphs.

229. Prior to and in connection with the sale, Defendants made express warranties to Plaintiffs, including that: (a) the Truck had been thoroughly inspected; (b) the Truck was in good condition; (c) the Truck was suitable for and ready for heavy-haul operations exceeding 100,000 pounds; and (d) the Truck could immediately go to work. These representations became part of bargain's basis.

230. The Truck failed to conform to these express warranties.

231. The Truck was not inspected.

232. The Truck was not in good condition.

233. The Truck was unusuable for its intended purpose, and the purpose for which Defendants understood Plaintiffs were purchasing it.

234. The Truck was incapable of any operations on roadways, much less heavy-haul operations.

235. Plaintiffs suffered damages as a direct result of these breaches. Any "as is" disclaimer in the purchase contract is inoperative. Under Wis. Stat. § 402.316(1), words tending to negate a warranty are inoperative to the extent they cannot be construed as consistent with Forge's express warranties, and Forge's express representations cannot be reconciled with a disclaimer of the very qualities it affirmed. Fraud independently vitiates the provision.

**<u>COUNT V</u>—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
*(All Defendants)*

236. Plaintiffs reallege and incorporate all prior paragraphs.

237. Forge is a merchant who deals in commercial trucks. As a merchant, Under Wis. Stat. § 402.314, Forge impliedly warranted that the Truck was fit for the ordinary purposes for which such trucks are used—namely, the operation of a commercial tractor-trailer on public highways.

238. The Truck was not fit for that ordinary purpose. It was legally out of service, had bilateral frame cracks, multiple zero-tolerance OOS defects, and could not be lawfully operated on any public road.

239. Plaintiffs suffered damages as a direct result of this breach.

**<u>COUNT VI</u>—BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE**
*(All Defendants)*

240. Plaintiffs reallege and incorporate all prior paragraphs.

241. At the time of sale, Forge and Bordignon had specific knowledge of the particular purpose for which Plaintiffs required the Truck—long-distance heavy-haul operations involving loads exceeding 100,000 pounds. Plaintiffs told Bordignon this purpose explicitly and relied on Forge's skill and judgment to select and represent a truck suitable for that purpose.

242. Under Wis. Stat. § 402.315, Forge impliedly warranted that the Truck was fit for this particular purpose.

243. The Truck was catastrophically unfit for this purpose. Operating a truck with bilateral frame cracks under a 100,000-pound load would risk complete structural failure.

244. Plaintiffs suffered damages as a direct result of this breach.

**COUNT VII — TEXAS DECEPTIVE TRADE PRACTICES ACT**
*(Against All Defendants)*

245. Plaintiffs reallege and incorporate all prior paragraphs.

246. Pleading in the alternative under Rule 8(d)(2), and alleging that Texas law governs this claim because the Truck was located in Texas, was inspected in Texas, and was sold through Forge's Texas dealership, Plaintiffs are "consumers" as defined under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.45(4), because they acquired the Truck by purchase.

247. Defendants engaged in false, misleading, and deceptive acts and practices in the conduct of trade or commerce in violation of Tex. Bus. & Com. Code § 17.46(b), including without limitation:

(a) **§ 17.46(b)(5):** Representing that the Truck had characteristics, uses, and benefits it did not have;

(b) **§ 17.46(b)(7):** Representing that the Truck was of a particular standard, quality, and grade when it was not;

(c) **§ 17.46(b)(9):** Advertising the Truck as "thoroughly inspected" with intent not to sell it as advertised;

(d) **§ 17.46(b)(12):** Representing that the transaction conferred rights, remedies, and obligations it did not confer; and

(e) **§ 17.46(b)(24):** Failing to disclose information Defendants knew at the time of the transaction, which information was intended to induce Plaintiffs into a transaction Plaintiffs would not have entered had the information been disclosed

248. Defendants' violations were committed **knowingly** and **intentionally** within the meaning of § 17.50(b)(1), as established by: (a) the *Gunn* default judgment finding that Forge acted knowingly and intentionally in violation of the DTPA on a petition alleging the same scheme; (b) the *Roadarmel* settlement for identical conduct entered 181 days before the Hacker sale; (c) the bypassed cooling system, which requires intentional mechanical modification; and (d) the post-sale VIN-discrepant inspection document.

249. Plaintiffs are entitled to actual damages, treble damages for knowing and intentional violations, attorneys' fees, and costs.

**COUNT VIII—ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
*(All Defendants)*

250. Plaintiffs reallege and incorporate all prior paragraphs.

251. Pleading in the alternative under Rule 8(d)(2), Defendants engaged in unfair and deceptive acts and practices occurring primarily and substantially in Illinois—where Forge maintains its principal place of business, where its website

and sales scripts are created and approved, and from which Bordignon communicated with Hacker—in violation of 815 ILCS 505/2, including representing the Truck as "thoroughly inspected" and in "good condition" when it was not, concealing the Truck's true condition, and engaging in a systematic scheme of misrepresentation directed at out-of-state buyers.

252. Plaintiffs suffered actual damages because of Defendants' unfair and deceptive practices.

**COUNT IX—WISCONSIN CONSUMER PROTECTION**
*(Against All Defendants)*

253. Plaintiffs reallege and incorporate all prior paragraphs.

254. Forge's sale of the Truck involved conduct in Wisconsin,  Forge published its representation that "all our trucks go through a full inspection" to the public in Wisconsin through its website, and Bordignon made the representations described above to Hacker in Manitowoc County, Wisconsin by telephone, text message, and electronic mail, where Hacker received them and relied on them. Forge then delivered the Truck into Wisconsin, including the inspection performed in Wisconsin by Nelson Truck & Equipment and the storage of the inoperable Truck at a Wisconsin facility.

255. Defendants' affirmative factual representations that—all Forge trucks "go through a full inspection," the Truck had been "thoroughly inspected," the Truck was in "good condition," and the Truck had a "clean title"—were untrue, deceptive, and misleading factual representations in violation of Wis. Stat. § 100.18.

256. Plaintiffs suffered a pecuniary loss as a result and are entitled to recover that pecuniary loss, together with costs, including reasonable attorney fees, under Wis. Stat. § 100.18(11)(b)2.

**COUNT X — BREACH OF CONTRACT**
*(Against Forge Defendants)*

257. Plaintiffs reallege and incorporate all prior paragraphs.

258. The parties entered into a valid contract for the purchase of the Truck at the agreed price. The contract incorporated Forge's express representations about the Truck's condition as terms or was induced by those representations.

259. Forge breached the contract by delivering a truck that did not conform to the represented condition, was not fit for the particular purpose disclosed, and was legally incapable of commercial operation.

260. Plaintiffs fully performed their obligations, including payment of the purchase price.

261. Plaintiffs suffered damages including the purchase price, loan interest, storage costs, and consequential and incidental damages flowing from Forge's breach.

**COUNT XI — RESCISSION**
*(Against Forge Defendants)*

262. Plaintiffs reallege and incorporate all prior paragraphs.

263. Plaintiffs are entitled to rescission of the purchase contract on grounds of fraud, fraudulent concealment, failure of consideration, and mutual mistake.

264. Plaintiffs promptly tendered or offered to tender the Truck upon discovering its true condition, and continue to make that offer.

265. Plaintiffs are entitled to restoration of the full purchase price, all incidental expenses, all loan interest paid, all storage fees paid, and all other amounts expended in reliance on the contract.

**<u>COUNT XII</u> – CIVIL CONSPIRACY TO DEFRAUD**
*(Against All Defendants)*

266. Plaintiffs reallege and incorporate all prior paragraphs.

267. Defendants Forge, Globe Group LLC, Globe Group Real Estate LLC, Starodub, DiGiuro, Bordignon, Redneck, Stewart, and Benners formed an agreement, express or implied, to accomplish the unlawful purpose of defrauding Plaintiffs and similarly situated buyers through the sale of defective trucks falsely represented as inspected and ready for operation.

268. In furtherance of this conspiracy:

*(i)* Forge/Bordignon made the fraudulent misrepresentations to Hacker;

*(ii)* Redneck/Stewart/Benners performed a sham post-sale "inspection" to provide Forge with a document it could use to deflect refund demands;

*(iii)* Starodub and DiGiuro organized Globe Group LLC and Globe Group Real Estate LLC to extract and insulate the fraud proceeds from any future judgment.

269. Each conspirator is jointly and severally liable for all damages caused by the conspiracy

**<u>COUNT XIII</u>—RECKLESSNESS**
*(Against Redneck, Stewart, Benners)*

270. Plaintiffs reallege and incorporate all prior paragraphs.

271. Redneck, Stewart, and Benners owed Plaintiffs a duty to perform a competent, honest inspection of the Truck and to disclose truthfully the results of that inspection.

272. Defendants performed no such inspection. Benners is unqualified to perform a commercial vehicle safety inspection. Redneck has three prior Dallas County lawsuits for the same type of fraudulent, defective work. Stewart told a prior customer after a near-fatal incident caused by Redneck's work: *"pipe down sir, you could've fucking rolled over six times and died…doesn't matter to me."* [***Exhibit 20***].

273. Redneck's conduct in providing a sham inspection of an Out-of-Service truck—presenting an unqualified person's rubber stamp as validation that a cracked-frame, fuel-leaking, bypassed-cooling-system truck was fit for 100,000-pound heavy-haul operations—constitutes recklessness: a conscious disregard of the rights, safety, and welfare of Plaintiffs and of the public at large.

274. Plaintiffs suffered damages as a direct result.

**<u>COUNT XIV</u>—UNJUST ENRICHMENT**
*(Against All Defendants)*

275. Plaintiffs reallege and incorporate all prior paragraphs.

276. In the alternative to contract-based claims, Defendants received the benefit of the purchase price, loan proceeds, and storage fees paid by Plaintiffs, under circumstances where retention of that benefit would be unjust.

277. Defendants should be required to disgorge all amounts received in connection with the Truck transaction.

## VI. RELIEF REQUESTED

278. Plaintiffs request that the Court enter judgment against each Defendant jointly and severally on all counts as follows:

*(i)* Awarding Plaintiffs full actual and compensatory damages, including:

(a) return of the Truck's full purchase price, along with the cost to replace the Truck and its difference in value;

(b) all loan interest paid from August 15, 2025 through the date of judgment;

(c) all storage fees paid from August 15, 2025 through the date of judgment;

(d) all lost profits and business revenues;

(e) all consequential and incidental damages;

*(ii)* In the alternative to the damages sought above, ordering rescission of the Truck's purchase contract and restoring the parties to their *positions before the sale* positions;

*(iii)* Awarding  treble damages under Tex. Bus. & Com. Code § 17.50(b)(1);

*(iv)* Awarding Plaintiffs' pecuniary loss, costs, and reasonable attorney fees under Wis. Stat. § 100.18(11)(b)2.;

*(v)* Awarding punitive damages under Wis. Stat. § 895.043, subject to the limitation in § 895.043(6);

*(vi)* Entering a permanent injunction as described above;

*(vii)* Awarding Plaintiffs reasonable attorneys' fees and costs;

*(viii)* Awarding pre-judgment and post-judgment interest;

*(ix)* Granting such other and further relief as is just and proper.

## VII. JURY DEMAND

279. Trial by jury is demanded on all issues so triable.

******

Respectfully submitted.

s/Andrew T. Thomasson

Dated: October 1, 2026

Andrew T. Thomasson (NJ 04836201)
Francesca A. Di Troia (TX 24097596)
KRW LAWYERS
19122 US Hwy 281 N, Suite 324
San Antonio, Texas 78258
Telephone: (973) 665-2056
Andrew@KRWlawyers.com
Francesca@KRWlawyers.com

William M. Clanton (TX 24049436)
LAW OFFICE OF BILL CLANTON, P.C.
926 Chulie Drive
San Antonio, Texas 78216
Telephone: (210) 226-0800
bill@clantonlawoffice.com

*Attorneys for Plaintiffs, Highway Legends LLC and Todd J. Hacker*